Pearson, O. J.
 

 This case .is governed by the decision
 
 State v. Glen,
 
 ante 321. According to the principle laid down in that case, there is error in the j udgment rendered in the Superior Court.
 
 *
 

 It is set out in the statement of the case,
 
 “
 
 that in 1794, a grant from the State issued to one Joseph Phillips and his heirs, bounded as follows: beginning at a white-oak below Glen’s ford, runs north up the Yadkin river 50 chains, west crossing the river 10 chains, south down the river 50 chains, and then east, to the beginning; that the white oak tree, mentioned as a corner, is still standing; that the dam is included within the boundaries of the grant, and that the defendant has derived title by a regular chain of mesne conve3rances from Phillips, the original grantee.” The defendant has, therefore, title to the bed of the river on which the dam stands, provided it was the subject of entry; and that depends upon whether the Yadkin river is a navigable stream or not. Many persons are of opinion that it is susceptible of
 
 being made
 
 nmigable, but upon the facts, set out in the case, it is certainly not now a navigable stream, and the cases cited in
 
 State
 
 v.
 
 Glen,
 
 show that it has been repeatedly, heretofore, so decided.
 

 Not being navigable, the defendant, by virtue of the grant to Phillips, is the owner of the bed of the river, and the Legislature had no more power to impair his right of ownership, either for public or private purposes, without making compensation, than it had to take awajr any other piece of land that he had bought and paid for, and for which the State had been paid.
 

 ■ This suggests, what probably has led to an erroneous impression ; that is the distinction between the absolute ownership, which is acquired to the bed of the river, when it has
 
 *515
 
 been actually granted and paid for, and the
 
 limited
 
 ownership, which is acquired where a grant calls for a “ corner on the bank of a river, then with its meanders to another corner, &c.;” in which case, although by implication of law, the grant extends to the middle of the river, and confers ownership, for certain purposes as appurtenant to the land granted, yet, as it has not been actually granted and paid for, certain rights, by like implication, are still in the State. This will seem to account for the many acts of the Legislature, that have been passed in former years, in regard to the passage of fish ; extending, at first, down to small streams, such as Haw Biver, Deep Eiver, Uwharie, South Tadkin and the like; which was well enough until the beds of these streams wei’e entered and grants taken out; after which, those streams were left out of the fish acts, until the Eoanoke, lower part of Neuse, Cape Fear, Tadkin and Catawba, became the only streams to which the acts applied; and the Tadkin is now excepted so far as its bed has been actually granted, of which there seems to have been few instances; for, in most cases, the grantees, not wishing to cross and pay for the bed, stop-ed at the bank, and were content with the appurtenance, or privilege of going to the middle of the stream, under what is termed the right of riparian ownership, or the right of those whose grants stop at the bank as contradistinguished from the ownership of those whose grants actually cover the bed. There is error.
 

 Per Curiam,
 

 Judgment reversed and judgment for the defendant.